# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Garry Thomas,**
**Defendant Below, Petitioner**

**vs) No. 15-1205  (Berkeley County 14-C-220)**

**Archie D. Houck,**
**Plaintiff Below, Respondent**

**FILED**

**November 16, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Garry Thomas, by counsel James T. Kratovil, appeals two November 20, 2015, orders of the circuit court denying his motions for a new trial and a December 10, 2015, order of the circuit court granting attorney's fees and legal costs to Mr. Houck.[1] Mr. Houck appears by counsel, Richard McCune and Alex Tsiatsos.  On appeal, Mr. Thomas argues that 1) the circuit court erred in granting Mr. Houck's motion *in limine* ruling that Mr. Thomas could not mention that Mr. Houck's use of the right of way was permissive; 2) the circuit court erred in granting Mr. Houck's Rule 50 Motion for Judgment as a Matter of Law based on the testimony presented at trial; 3) the circuit court erred in not granting Mr. Thomas' motion for a new trial because he was pro se at trial; 4) the circuit court erred in awarding Mr. Houck attorney's fees; and 5) the circuit court erred in not assisting Mr. Thomas in securing the attendance of a former co-defendant at trial.

This Court has considered the parties' briefs, oral arguments, and the appendix record on appeal. Under the limited circumstances presented in this case, we find a memorandum decision affirming the circuit court, in part, reversing in part, and remanding for further proceedings appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

As explained below, while we conclude that the circuit court committed no reversible error as pertains to its November 20, 2015 orders, we conclude that the circuit court failed to properly assess the factors enumerated in *Aetna Casualty & Surety Company v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986) relative to its award of

---

[1] A September 23, 2015, judgment order was deemed not timely appealed by this Court.

1

attorney fees and therefore reverse the circuit court's December 10, 2015, order and remand for further proceedings as necessary and entry of an order consistent herewith.

This appeal stems from a dispute between Mr. Thomas and Mr. Houck regarding a road on Mr. Thomas's property that Mr. Houck used to access his own property. Mr. Houck and his family own property in the Hedgesville area of Berkeley County, West Virginia. Russel L. Way, a co-defendant in the proceedings below, who is not a party to this appeal, owns property immediately adjacent to Mr. Houck's property. Mr. Thomas owns real property that is immediately adjacent to Mr. Way's property, which he purchased in 1997. The subject road connected Mr. Houck's property to West Virginia County Rte 3/2 and was reportedly the only way for Mr. Houck to access his property. Mr. Houck asserts that his family used this road for generations before Mr. Thomas moved into the area, and afterward. However, in 2013, Mr. Thomas built a fence, closing the road. Mr. Houck complained to Mr. Thomas that he had a right of way to cross the property, but Mr. Thomas refused to re-open the road. As a result, Mr. Houck filed suit against Mr. Thomas and Mr. Way asserting that he had a prescriptive easement to access his property.

Mr. Thomas represented himself *pro se* in the underlying action. At trial, Mr. Thomas and his wife testified that Mr. Houck did not have permission to use the right of way and that he did not use the subject road often. To counter their testimony, Mr. Houck presented several witnesses at trial that testified that the right of way was the only way that Mr. Houck could access his property, and that as a result, Mr. Houck and his family had used that right of way since approximately 1920. Mr. Houck also testified that he continued to use the right of way for a ten year period after the Thomases acquired their property. Mr. Houck asserted that he has never asked permission to use the subject right of way at any time. Additionally, Mr. Houck presented two expert witnesses at trial, one of whom testified to the dimensions of the road and the other who testified that although the right of way does not exist on a tax map, "it doesn't mean the right of way doesn't exist." Mr. Houck further asserted that Mr. Thomas's interest in the property was expressly made subject, by deed, to existing rights of way such as Mr. Houck's, stating "This conveyance is made subject to covenants, restrictions, agreements, easements, and rights of way recorded in the aforesaid clerk's office in Deed Book 253 at Page 249 and of record and in existence."

Mr. Thomas, proceeding *pro se* despite being cautioned against it by the circuit court, did not present any expert testimony or other evidence to impeach Mr. Houck's witnesses. Under cross-examination, Mr. and Mr. Thomas admitted that Mr. Houck used the subject right of way "many times" since they purchased their property. Additionally, Mr. Green, who sold Mr. Thomas the property, testified in his deposition that he told Mr.

Thomas that Mr. Houck had the right to use the road.[2]  Mr. Thomas denied that this conversation took place.

After the close of Mr. Thomas' case, Mr. Houck filed a renewed Motion for Judgment as a Matter of Law pursuant to Rule 50 of the West Virginia Rules of Civil Procedure asserting that based upon the evidence presented and the concessions by the parties, there was no legally sufficient evidentiary basis for a reasonable jury to find for Mr. Thomas with respect to the first three elements required to establish a prescriptive easements as set forth in syllabus point one of *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010).[3]  The court granted Mr. Houck's Rule 50 motion on the last day of trial, finding that

> the evidence is clear and convincing that Mr. Houck's use of the alleged right of way was adverse for at least the period of 1981 to 1997, being more than a 10 year period, and that no reasonable juror could find to the contrary for purposes of accessing his family property. The Court finds and concludes that during that time, if not longer, Mr. Houck's use of the alleged right of way was continuous and uninterrupted, in the manner that any owner of a right of way would use it, as demonstrated by clear and convincing evidence. The Court further notes that Mr. Thomas has conceded this point and that no reasonable juror could find to the contrary. The Court also finds and concludes that, by clear and convincing evidence, that no reasonable juror could find otherwise than that the owners of the property over which Mr. Houck's alleged right of way travels had actual knowledge of Mr. Houck's adverse use or that a reasonable owner would have noticed the use.

---

[2] Mr. Green's deposition testimony was admitted at trial because he was unavailable to testify in person.  Mr. Thomas did not object.

[3] In *O'Dell*, this Court held that

[a] person claiming a prescriptive easement must prove each of the following elements: (1) the adverse of another's land; (2) that the adverse use was continuous and uninterrupted for at least ten years; (3) that the adverse use was actually known to the owner of the land, or so open, notorious and visible that a reasonable owner of the land would have noticed the use; and (4) the reasonably identified starting point, ending point, line, and width of the land that was adversely used, and the manner or purpose for which the land was adversely used.

The circuit court, however, left the issue of the actual dimensions of the right of way for the jury's determination.[4]  Upon deliberation, the jury awarded special damages to Mr. Houck in the amount of $5,331.48 and found that Mr. Houck was entitled to attorney's fees. Additionally, the circuit court made the finding that there was sufficient evidence in the record to justify submission of punitive damages to the jury, because, "the jury could conclude that [Mr. Thomas] was aware of [Mr. Houck's] prescriptive easement and that the erection of the fence was intentional, reckless and harmful, and/or that it exhibited criminal indifference to civil obligations."  After a second round of deliberations, the jury awarded Mr. Houck $15,000.00 in punitive damages.

Mr. Thomas subsequently moved to set aside the verdict and moved for a new trial, filing a handwritten letter and/or motion requesting a "retrial or mistrial," and "objecting" to the court's order granting Mr. Houck Rule 50 judgment as a matter of law.[5]  Mr. Thomas subsequently filed an additional motion for a new trial, making further objections to Mr. Houck's use of various survey documents as trial exhibits.[6]  On November 20, 2015, the circuit court entered two orders denying both of Mr. Thomas' motions.  Upon Mr. Houck's motion and commensurate with the jury's determination that Mr. Houck was entitled to attorney's fees and costs, the circuit court awarded attorney's fees in the amount of $120,513.75 and $4,726.51 in costs.  Mr. Thomas now appeals the orders of the circuit court and requests a new trial.

In his first assignment of error, Mr. Thomas asserts that the circuit court erred in granting Mr. Houck's Motion *in Limine* #4, ruling that he could not mention that Mr. Houck's use of the alleged prescriptive right of way was permissive.[7]  This issue,

---

[4] The jury determined the dimensions to be 799 feet long and 14 feet wide.

[5] Therein, he essentially asked the court to help promote settlement negotiations between the parties on a location of the right-of-way, and alternatively, to re-examine the testimony of the parties regarding Mr. Houck's use of the right-of-way.  He also asked the court to re-examine Mr. Houck's experts' use of various surveys as exhibits at trial, and asserted that the circuit court should have assisted him in procuring Mr. Way as a witness at trial.

[6] Although designated as one of the orders on appeal, none of Mr. Thomas' assignments of error specifically address this issue; therefore, we decline to address it herein.

[7] Additionally, Mr. Thomas asserts error with respect to the circuit court's ruling on Motion *in Limine* #8, which he contends prevented him from presenting testimony regarding Mr. Houck's "non-use" of the right of way.  However, our review of the record indicates that Motion *in Limine* #8 does not pertain to this issue.  Rather, it only refers to references being made about Mr. Thomas' disabled son. The record discloses no order by

4

however, was *not* presented in his motion for a new trial and therefore should have been appealed from entry of the September 23, 2015 judgment order. The record reflects that Mr. Thomas failed to file a Notice of Appeal within the thirty day time frame required by Rule 5(b) of the West Virginia Rules of Appellate Procedure. In footnote 1 of this Court's scheduling order, we stated "Petitioner presented a timely and complete notice of appeal from orders of the Circuit Court of Berkeley County entered on November 20, 2015, and December 10, 2015. The notice of appeal is not timely from the September 23, 2015 order." *See* W. Va. R. App. P. 5(b) ("[w]ithin thirty days of entry of the judgment being appealed, the party appealing shall file the notice of appeal and the attachments required in the notice of appeal form contained in Appendix A of these Rules"); *Cronin v. Bartlett*, 196 W. Va. 324, 326, 472 S.E.2d 409, 411 (1996) (appeal dismissed when not filed in time). Accordingly, the Court will not address the merits of this issue.

In his second assignment of error, Mr. Thomas contends that the circuit court erred in granting Mr. Houck's Rule 50 Motion for Judgment as a Matter of Law[8] based on the testimony presented at trial.[9] Specifically, Mr. Thomas appears to take issue with the circuit court's conclusion that Mr. Houck established "continuous" adverse use and did not accord proper weight to his and his wife's testimony that Mr. Houck did not continuously adversely use the right of way after 1999 or 2000. Mr. Thomas contends that the court's finding that Mr. Houck had established a right of way "for at least the period 1981 to 1997" was not dispositive of the "continuous use" element required in

---

the circuit court prior to the close of evidence which would have prevented Mr. Thomas from arguing Mr. Houck's "non-use" of the right of way. In fact, Mr. Thomas testified about Mr. Houck's use at trial.

[8] Pursuant to Rule 50(a) of the West Virginia Rules of Civil Procedure,

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

[9] As noted above, Mr. Houck did not timely appeal the September 23, 2015 judgment order setting forth the issues upon which the circuit court granted judgment as a matter of law. However, this argument was ostensibly presented as part and parcel of Mr. Thomas' motion for a new trial. Pursuant to Rule 50(c)(2) of the West Virginia Rules of Civil Procedure, "[t]he party against whom judgment as a matter of law has been rendered may file a motion for a new trial pursuant to Rule 59 not later than 10 days after entry of the judgment." Therefore we will address it on its merits as presented on appeal.

*O'Dell*.[10] Mr. Thomas contends that the actions of Mr. Houck from the period from 2000 to 2013 are critical, and that if Mr. Houck abandoned the use during the statutory period, then the right would be lost. Mr. Thomas points to his own testimony indicating that Mr. Houck used the road from 1997 to 2000 with permission, but did not use it after they had a falling out in 2000. He alleges that there is a thirteen year period that Mr. Houck used other means to access his property.

With respect to the applicable standard of review of a denial of a motion for a new trial, we have stated:

> As a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard. *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994). Thus, in reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Tennant v. Marion Health Care Foundation, Inc.*, 194 W. Va. 97, 104, 459 S.E.2d 374, 381 (1995).

With respect to prescriptive easements, this Court has held generally that "[i]n order to establish a right of way by prescription, all of the elements of prescriptive use, including the fact that the use relied upon is adverse, must appear by clear and convincing proof." Syl. Pt. 2, *Beckley Nat. Exchange Bank v. Lilly*, 116 W.Va. 608, 182 S.E. 767 (1935). As pertains specifically to the "continuous use" element of a prescriptive easement, this Court has stated:

> For an adverse use to be "continuous," the person claiming a prescriptive easement must show that there was no abandonment of the adverse use during the ten-year prescriptive period, or recognition by the person that he or she was using the land with the owner's permission. Additionally, the adverse use need not have been regular, constant or daily to be "continuous," but it must have been more than occasional or sporadic. All that is necessary is that the person prove that the land was used as often as required by the nature of the easement sought, and with enough regularity to give the owner notice that the person was a wrongdoer asserting an easement.

---

[10] See footnote 3, *supra*.

Syl. Pt. 8, *O'Dell*.

Upon review of the record before us, we conclude that the circuit court's findings in its Rule 50 order are not clearly erroneous and, in fact, are supported by clear and convincing evidence. The virtually uncontroverted evidence clearly establishes that Mr. Houck used the right of way continuously and openly both prior to the Thomases acquisition of the property and for a 10-year period thereafter. Mr. Thomas admitted actual knowledge of Mr. Houck's use of the right of way during the period at issue and that he did so without permission.

With respect to Mr. Thomas' assertion that Mr. Houck abandoned the prescriptive easement by failing to prove continuous and uninterrupted use of the roadway in the years between 2000 and 2013, we find no merit to this argument. Mr. Houck provided ample testimony that he continued to use the property between 2000 and 2013, and this use was more than occasional or sporadic, with enough regularity to give notice that he continued to assert an easement. Mr. Thomas presented no evidence of any overt action on his part to assert ownership of the subject right of way, other than verbally objecting to Mr. Houck's use after an alleged falling out in or around 1999, until he erected a fence over the right of way in 2013. As our law states, "mere unheeded requests, protests, objections, or threats of prosecution or litigation by the landowner that the person stop are insufficient to interrupt an adverse usage." Syl. Pt. 9, *O'Dell*. We conclude that these objections prior to Mr. Thomas' erection of the fence were insufficient to interrupt Mr. Houck's adverse use of the right of way that had been ongoing for generations. It is apparent from the testimony presented that none of Mr. Thomas' actions caused Mr. Houck to discontinue or interrupt his adverse use until 2013. Prior to that, Mr. Houck's use of the property was open and notorious so that a reasonable owner would have been on notice of his adverse use. Based upon the testimony presented, Mr. Houck proved that he had a right of way by prescription by clear and convincing evidence. The circuit court properly concluded that the evidence was so clear and convincing that no reasonable juror could have found to the contrary. Accordingly, we affirm the circuit court's ruling on this issue.

Two of Mr. Thomas' remaining three assignments of error likewise derive of the circuit court's denial of his motion for a new trial, but pertain more specifically to his decision to proceed pro se in the underlying litigation. In general, Mr. Thomas contends that because he now has a lawyer, he should get a new trial. He also contends, more specifically, that the circuit court should have assisted him in securing the attendance of Richard Way, a former co-defendant. Mr. Thomas represented to the trial judge that he in fact subpoenaed Mr. Way, but he did not include a copy of the subpoena as part of the record, nor did he verify proof of service. It appears from the record that the circuit court reviewed a letter from Mr. Way's counsel, but a copy of that letter is not part of the designated record on appeal.

7

We note first that the record specifically reflects that Mr. Thomas was cautioned by the Court about the advisability of procuring an attorney. However, as this Court has held in *State v. Blosser*, 158 W. Va. 164, 167-68, 207 S.E.2d 186, 189 (1974), "'[t]he right of a party to appear in his own behalf and be heard in the courts is fundamental. It is an inalienable right common to all, guaranteed both by the constitution of the state and the Constitution of the United States.'" (quoting 5 M. J. *Criminal Procedure* § 41, p. 371 (1949)). When a pro se litigant exercises this right, we have recently agreed that

> a trial court bears the responsibility to ensure the litigant receives fair and balanced proceedings. Our Court has consistently recognized that cases should be decided on the merits, which may require "reasonable accommodation" of litigants, whether represented by counsel or not. "Reasonable accommodation" does not, however, require a court to cross the fine line between accommodating a litigant and advocating for the litigant. Nor does it require the Court to give legal counsel. Ultimately, the *pro se* litigant bears the responsibility and the consequences of his mistakes and errors.

*Daye v. Plumley*, No. 13-0913, 2014 WL 1345493, at *10 (W. Va. Apr. 4, 2014), *cert. denied*, 135 S. Ct. 117, 190 L. Ed. 2d 89 (2014) (citations omitted).

With respect to subpoenaing Mr. Way, the record demonstrates that the circuit court invited Mr. Thomas to prove service of process on Mr. Way, upon which it would compel his attendance. Mr. Thomas failed to do so. Moreover, aside from this singular specific incident wherein he apparently expected greater assistance from the circuit court, Mr. Thomas fails to even assert what alleged "errors" were occasioned by his pro se status. We find that the circuit court's actions requiring Mr. Thomas to present proof of service of the subpoena were appropriate, as it was not required to act further in order to ensure that Mr. Thomas received a fair and balanced proceeding. Accordingly, we affirm the circuit court's ruling on this issue.

In his final assignment of error, Mr. Thomas alleges that the circuit court improperly awarded Mr. Houck his attorney's fees. Mr. Thomas asserts that attorney's fees are not recoverable absent a statutory or contractual provision and that because there is no bad faith in this case, the award of attorney's fees is improper. Mr. Thomas appears to assert that because he did not *litigate* in bad faith—citing the circuit court's refusal to grant Mr. Houck's motion for summary judgment or direct a verdict at the close of his case—attorney's fees are improper.

Syllabus point three of *Sally-Mike Properties v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986) states: "There is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive

reasons." The jury in this matter expressly found that Mr. Thomas "acted either in bad faith or vexatiously or wantonly or intentionally or for oppressive reasons[.]" The jury further found that Mr. Thomas intentionally blocked the right of way with the intent of permanently depriving Mr. Houck of its use. We therefore conclude that the circuit court committed no error in finding that Mr. Houck was entitled, in general, to an award of attorney's fees and costs.[11]

We find it necessary nonetheless to examine further the amount of the attorney's fee award. The circuit court conducted a hearing, taking testimony from Mr. Houck's attorney, and reviewed affidavits and a statement of fees submitted in support thereof. In setting forth its rationale for the fee award, the circuit court addressed each of the elements set forth in syllabus point four of *Pitrolo.*[12] After making these findings under *Pitrolo*, the circuit court ruled that Mr. Houck was entitled to $120,513.75 in attorney's fees and $4,726.51 in legal costs.

With respect to the *Pitrolo* factors, the circuit court found that 1) the evidentiary burden for establishing a right of way, along with the time-intensive nature of this

---

[11] *But see Boyd v. Goffoli*, 216 W. Va. 552, 569, 608 S.E.2d 169, 186 (2004) ("An obvious purpose of awarding attorney fees and costs in a case involving fraud is that intentional conduct such as fraud should be punished and discouraged. As reasoned by the circuit court, however, Appellant has been sufficiently discouraged from future fraudulent conduct by the sizable punitive damages awarded by the jury. As a result, an award of attorney fees and costs is not necessary to perform this function.").

[12] In Syllabus Point 4 of *Pitrolo*, this Court held that

> Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

particular case, factored heavily into the difficulty of the questions; 2) that Mr. McCune is a skilled, 40-year litigator; 3) Mr. McCune was precluded from working on other litigation files, including billable hour matters; 4) success was necessary for Mr. Houck to pay Mr. McCune; 5) the jury trial was burdensome on Mr. McCune's two-person firm; 6) Mr. McCune obtained excellent results, including punitive damages and fees; 7) Mr. McCune and his associate have excellent reputations; 8) right-of-way disputes are difficult and contentious with unlikely fee-shifting and punitives; 9) Mr. Houck is satisfied with his counsel; and 10) fee awards in other reported cases were much greater.

Although we do not take issue with the circuit court's methodology in assessing the individual *Pitrolo* factors, we cannot turn a blind eye to the facially exorbitant attorney's fee award resulting therefrom. *See McAfee v. Boczar*, 738 F.3d 81, 94 (4th Cir. 2013), *as amended* (Jan. 23, 2014) ("[W]e cannot ignore the pronounced disproportionality between the verdict . . . and the fee award[.]"). As indicated, Mr. Houck was awarded approximately $5,000.00 in compensatory damages and $15,000.00 in punitive damages. An attorney's fee and cost award of approximately $125,000.00 represents a multiplier of twenty-five of the compensatory damages. This incongruence necessarily compels us to examine the circuit court's specific findings further.

We recognize that "'the trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees; and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion.' Syl. Pt. 3, in part, *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959)." Syl. Pt. 1, *Heldreth v. Rahimian*, 219 W. Va. 462, 637 S.E.2d 359 (2006). Nevertheless, we assess each factor with the backdrop that the hours invested and resulting fee appear to this Court disproportionate for the nature and complexity of the case and seek to determine if the circuit court's analysis properly justifies this apparent lack of proportion.

First, with respect to the time and labor required and "difficulty" of the issue presented, while we do not question the accuracy with which Mr. Houck's attorneys kept their time, we do question the necessity of expending 695 hours on an easement case defended by a pro se litigant. Although the circuit court summarily concluded that Mr. Thomas' pro se status increased the time invested in this matter, we find nothing in the circuit court's order identifying in what way Mr. Thomas' pro se status required additional work than would ordinarily be necessitated by one's opponent. The fact that his filings were occasionally challenged or necessitated follow-up is not uncommon in adversarial litigation. The fact that Mr. Thomas was pro se, however, certainly would appear to suggest that he did not affirmatively generate the type of litigation activity one would expect of an opposing attorney with the supporting resources of his or her firm.

Further, with respect to the circuit court's discussion of the difficulties of the high burden of proof and unlikelihood of such a successful outcome, we find that the circuit

court's grant of judgment as a matter of law undercuts these conclusions. At the close of evidence, the circuit court found the evidence so compelling and one-sided that it entered judgment as a matter of law. As the recitation of facts above reflects, Mr. Houck had an abundance of evidence that he satisfied the elements for a prescriptive easement and Mr. Thomas offered virtually nothing to controvert that evidence. As such, the facts of the case as presented by Mr. Houck himself and the circuit court appear to suggest that, despite Mr. Thomas' refusal to accept the clear legal implications of the evidence, Mr. Houck's case itself was fairly straight-forward and met with little to no resistance at trial.[13]

The circuit court's order concedes that easements are not novel, Mr. Houck and his counsel had no long-standing professional relationship, and that fee-shifting in prescriptive easement cases are uncommon. Moreover, the attorney fee awards used for comparison by the circuit court involve far more complex cases, such as consumer credit actions. In sum, we find that the circuit court's conclusions with respect to the above factors seem self-fulfilling and are belied by the manner in which the underlying action unfolded as per the parties. We therefore conclude that the circuit court abused its discretion in assessing the *Pitrolo* factors and remand for further proceedings and

---

[13] We note, also, that the circuit court's assessment of whether the fee was "customary," was inadequately justified in the order. The circuit court found that because Mr. Houck's attorneys charged the same hourly rates charged to all of their billable hour fixed rate cases, the fee was "customary." However, this *Pitrolo* factor seeks not to ascertain whether hourly rates and aggregate fees are "customary" for the particular attorney seeking fees. Rather, this factor seeks to determine whether such fee is customary for "similar legal services" rendered by *other* attorneys. *See* Syl. Pt. 3, *Stafford v. Bishop,* 98 W.Va. 625, 127 S.E. 501 (1925) (requiring court to consider "usual and customary charges for like services in the same vicinity"); *see also* Rule 1.5(a)(3) W. Va. Rules of Prof. Cond. (prohibiting unreasonable fees and requiring consideration of "fee customarily charged in the locality for similar legal services" to determine reasonableness); *Williston on Contracts*, § 62:8, "Attorney's right to be compensated for services—Reasonableness of fee" (4th ed.) (observing that "the amount commonly paid an attorney for similar duties in a similar locality" is commonly designated reasonableness factor).

In spite of the circuit court's order's deficiency in that regard, the record reveals that Mr. Houck's attorney submitted an affidavit by a local lawyer engaged in similar practice who opined, under oath, that the hourly rate was customary. Therefore, we find no reversible error with respect to this particular element of the *Pitrolo* analysis. We likewise do not take issue with the circuit court's assessment of the experience and skill of Mr. Houck's attorneys.

findings by the circuit court, as needed, to ascertain a reasonable attorney's fee and cost award.

For all of the foregoing reasons, we affirm the November 20, 2015, orders of the circuit court. However, we reverse the December 10, 2015, order of the circuit court and remand for further proceedings consistent herewith.

Affirmed in part, reversed in part, and remanded.

**ISSUED**: November 16, 2016

**CONCURRED IN BY**:

Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Allen H. Loughry II

**Chief Justice Ketchum, dissenting in part and concurring in part:**

The amount of the lawyer fee awarded in this implied easement case is outrageous.

The circuit court awarded a lawyer fee of $120,513.75 to the winning party. There is no implied easement case or deed case in West Virginia, much less Berkeley County, where a lawyer charged his client near the fee that the circuit court is requiring the losing party to pay the plaintiff's lawyer. Lawyers do not receive a six- figure fee or even a five-figure fee in implied easement cases or deed cases. The $120,513.45 lawyer fee awarded in this case is excessively unreasonable.

In addition, the plaintiff was awarded punitive damages approximately three times the amount of the compensatory damages awarded. Punitive damages are to punish a losing party that has acted in bad faith, vexatiously, wantonly or for oppressive reasons. We have previously held that an obvious purpose of awarding attorney fees against a party who acted in bad faith, vexatiously, wantonly, or for oppressive reasons is to punish and discourage this type of conduct. *Boyd v. Goffoli*, 216 W.Va. 552, 608 S.E.2d 169 (2004). The punitive damage award has sufficiently punished and discouraged the defendant from repeating this type of conduct in the future. As a result, an award of attorney fees and costs was not necessary to perform this function. *Boyd, supra.*

I dissent because attorney fees should not have been awarded, and if the award of attorney fees was warranted, the amount awarded was oppressively unreasonable.

12

**Justice Benjamin, concurring in part and dissenting in part:**

I concur with the majority's decision insofar as it affirms the trial court's orders. However, I dissent with respect to the majority's reversal of the trial court's finding regarding the reasonableness of the attorney's fees award.

In *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959), we explained, "[T]he trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees; and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion." *Id.* at 478-79, 109 S.E.2d at 17, syl. pt. 3, in part. In awarding attorney's fees in this case, the trial judge considered each of the twelve factors listed in Syllabus Point 4 of *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986). Although the majority finds that the trial court erred in his consideration of factor five, "the customary fee," I believe that the trial court's order, which contains an extensive analysis of the *Pitrolo* factors, sufficiently supports its reasoning.

The trial court found that the hourly rate charged by the plaintiff's lawyer was a "customary hourly rate." Senior partner, Mr. McCune, billed his time at $240/hr. Mr. Tsiatsos's time as junior partner was billed at $180/hr. Mr. McCune has been a skilled and successful litigator, often litigating land disputes, for more than 40 years. Mr. Tsiatsos has practiced for eight years and has demonstrated his skills before local judges. Those were the rates charged to all billable hour fixed rate cases by Mr. Houck's counsel at the time this case began in 2013. Para-professional time was billed at $75/hr. By the time the case concluded, Mr. Houck's counsel's office had billed a total of 695 hours. The trial court found that proof of time spent was well-documented, and that the time spent and the rates are reasonable and customary given the circumstances. Specifically, the trial court concluded,

> The evidence showed that this case involved interviewing dozens of witnesses regarding prior use, numerous visits to the property, consulting on many occasions with surveyors and researching various issues related to easement law. The fact that Mr. Thomas decided to proceed *pro se* also added to the difficulty. Mr. Thomas often did not file appropriate and timely documents, and with respect to documents actually filed, Mr. Houck's counsel often received documents that required objection or other actions that would have been unnecessary had the documents been filed by counsel. The trial court expressly cautioned Mr. Thomas about the importance of having his own counsel. Mr. Thomas, as was his right, chose to proceed without counsel. Had Mr. Thomas obtained counsel, it is likely

that his counsel would have impressed upon Mr. Thomas the need to remove his fence and to settle the case.

Although Mr. Thomas now claims on appeal that the amount of fees is unreasonable, he does not identify any specific deficiency in the trial court's reasoning, nor does he claim that the trial court's *Pitrolo* analysis was faulty in any way. Even now, Mr. Thomas does not challenge any specific charge in Mr. Houck's counsel's fee statement. Furthermore, the parties tried this case to a jury for three days. The jury trial, and the eighteen months of litigation before it, was costly to Mr. Houck. For example, Mr. Houck and his attorneys had to track down and interview witnesses who lived as far away as Tennessee; visit the property with experts on numerous occasions; take additional time to attempt to decipher and address Mr. Thomas's *pro se* pleadings and other filings; address procedural irregularities caused by Mr. Thomas's decision to proceed *pro se*; and then make all the necessary pretrial and trial preparations and filings. This case took the amount of time that it did specifically because of Mr. Thomas's actions.

The trial court, who is vested with a wide discretion in determining the amount of attorney's fees, carefully reviewed the evidence and made specific findings justifying its award. Because there was no clear abuse of discretion committed by the trial court, I hesitate to now disturb that finding on appeal. For these reasons, I respectfully concur and dissent.